AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| *A beige 2022 Polaris Slingshot bearing* | ) | Case No. **2:25-MJ-02291** |
| *California license plate 26G9205* | ) | |
| | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

> *See Attachment A-5*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

> *See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956 | Conspiracy to Launder Monetary Instruments |

The application is based on these facts:

> *See attached Affidavit*

☒ Continued on the attached sheet.

*/s/ Ryan Bennett*
_____
*Applicant's signature*

Ryan Bennett, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: <u>Los Angeles, CA</u>

Hon. Karen L. Stevenson, Chief U.S.M.J.
_____
*Printed name and title*

AUSA: William Larsen (x0298)

## **ATTACHMENT A-5**

A beige in color, 2022 Polaris Slingshot bearing California license plate 26G9205 ("SUBJECT VEHICLE 4"), which is registered to Ronny BELTRAN or Maria MUNOZ at 925 West 152nd Street, Compton, CALIFORNIA, 90220.

A picture of SUBJECT VEHICLE 4 is included below:



**ATTACHMENT B**

I.    **ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, and contraband, fruits of crime, or other items illegally possessed in connection with violations of Title 18, United States Code, Section 1956 (conspiracy to launder monetary instruments) (the "Subject Offense"), namely:

a.    Items used in the packaging of currency for consolidation and transportation, such as money-counting machines, money wrappers, carbon paper, rubber bands, duct tape or wrapping tape, plastic wrap or shrink wrap, and plastic sealing machines;

b.    United States currency over $1,000 or bearer instruments worth over $1,000 (including cashier's checks, traveler's checks, certificates of deposit, stock certificates, and bonds) (including the first $1,000), and data, records, documents, or information (including electronic mail, messages over applications and social media, and photographs) pertaining to, obtaining, possessing, using, applications for, or transferring money over $1,000, such as bank account records, money transmission records, cryptocurrency records and accounts;

c.    Documents or other records containing information regarding the creation, ownership, and/or control of businesses created under the names of either Ronny Fernando BELTRAN and/or Maria Del Dolores MUNOZ, including but not limited to Zamudio Construction LLC and MDM 360 LLC.

d. Documents or other records containing information regarding the business activities of, income generated by, and/or assets purchased or owned by Ronny Fernando BELTRAN, Maria Del Dolores MUNOZ, Zamudio Construction LLC, and/or MDM 360 LLC, including but not limited to, credit reports, paycheck stubs, bank statements, credit card or loan applications, or tax documents.

e. Documents or other records containing information regarding the purchase, sale, transfer, or ownership of vehicles, including off-road recreational vehicles, by Ronny Fernando BELTRAN, Maria Del Dolores MUNOZ, Zamudio Construction LLC, or MDM 360 LLC;

f. Documents and records reflecting the identity of, contact information or financial account numbers for, communications with, or times, dates or locations of meetings with co-conspirators, sources of unlawful proceeds, or recipients of unlawful proceeds, including calendars, address books, telephone or other contact lists, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when unlawful proceeds were collected, deposited, transmitted, stored, or delivered;

g. Records, documents, programs, applications, or materials from January 1, 2022, to present reflecting or relating to payment, receipt, concealment, transfer, or movement of money, including but not limited to bank account records and

other financial institution records, wire transfer records,
receipts, safe deposit box keys and records, and notes;

      h.  Contents of any calendar or date book; and

      i.  Any digital device, including cellular phones,
laptop computers and/or desktop computers. This authorization is
for the search of the digital devices and not for any sort of
forensic examination.

## AFFIDAVIT

I, Ryan Bennett, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of an application for warrants to search:

a.    925 W. 152nd Street, Compton, CA 90220, as further described in Attachment A-1 (the "SUBJECT PREMISES");

b.    A gray 2022 Dodge Ram bearing California license plate 80064K3, registered to Ronny F Beltran or Maria Munoz at 925 West 152nd Street in Compton, California 90220, as further described in Attachment A-2 ("SUBJECT VEHICLE 1");

c.    A gray 2023 Toyota Corolla bearing California license plate 9DWX100, registered to Ronny Beltran or Zamudio Construction LLC at 925 West 152nd Street in Compton, California 90220, as further described in Attachment A-3 ("SUBJECT VEHICLE 2");

d.    A white 2024 Toyota Camry bearing California license plate 9JWH296, registered to Ronny Beltran or Zamudio Construction LLC at 925 West 152nd Street in Compton, California 90220, as further described in Attachment A-4 ("SUBJECT VEHICLE 3");

e.    A beige 2022 Polaris Slingshot bearing California license plate 26G9205, registered to Ronny Beltran or Maria Munoz at 925 West 152nd Street in Compton, California 90220, as further described in Attachment A-5 ("SUBJECT VEHICLE 4"); and

f.    A black 2023 Can-Am Maverick bearing California license plate ED9Z59, registered to Ronny Beltran and Maria

Munoz at 925 West 152nd Street in Compton, California 90220, as further described in Attachment A-6 ("SUBJECT VEHICLE 5").

2.    The requested search warrants seek authorization to seize evidence; and contraband, fruits of crime, or other items illegally possessed in connection with violations of Title 18, United States Code, Section 1956 (conspiracy to launder monetary instruments) (the "Subject Offense") as described more fully in Attachment B.

3.    Attachments A-1 through A-6, and Attachment B are incorporated herein by reference.

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

## II. <u>BACKGROUND OF AFFIANT</u>

5.    I am a Special Agent ("SA") with the Internal Revenue Service – Criminal Investigation ("IRS-CI") and have been so for approximately six years. For the past year, I have also been a Task Force Agent ("TFA") with the Drug Enforcement Administration ("DEA"). I am currently assigned to the

Integrated Narcotics Task Force ("NTF"), in San Diego, California. This multi-agency task force focuses upon the dismantling of trafficking organizations operating within Southern California.

6.    I am a graduate of the Federal Law Enforcement Trancing Center Criminal Investigator Training Program and the IRS-CI Special Agent Basic Training Program located in Glynco, Georgia. During these courses I was trained in various types of criminal investigations, to include tax fraud, bank fraud, and money laundering.

7.    As an IRS-CI SA, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

8.    During my time as a TFA with DEA I have participated in investigations involving the distribution of controlled substances and money laundering. I have conducted surveillance, conducted search warrants, reviewed telephone toll analysis, interviewed confidential informants, and reviewed financial information. Through these investigations, I have obtained knowledge regarding how Drug Trafficking Organizations ("DTOs") launder the proceeds of drug trafficking activities.  Prior to joining NTF, I conducted investigations involving tax fraud, identity theft, bank fraud, theft of public funds, conspiracy, and money laundering.

9.    Based on my training and experience I am familiar with how drug traffickers operate. For example, I am aware that drug traffickers frequently use the financial system to launder the proceeds of their criminal activity. I know that criminals establish entities with misleading names and lie to bank officials about the nature of their business activity. I know that co-conspirators are often directed to deposit drug proceeds into bank accounts near where the drug activity took place. I know that money launders further conceal that the funds are drug proceeds by conducting "layering" transactions by conducting cash withdrawals or sending electronic wires to other entities involved in the money laundering conspiracy.

### III.  SUMMARY OF PROBABLE CAUSE

### A.    Overview of Investigation

10.    In late 2023, DEA began investigating a network of individuals in north San Diego County that were involved in distributing controlled substances.

11.    During the investigation, agents identified Elijah ROMAN as someone involved in facilitating the distribution of drugs in the United States and personally selling drugs in San Diego County.

12.    In May and August of 2024, ROMAN sold three pounds of methamphetamine to a cooperating source in San Diego County in two separate transactions. On September 12, 2024, investigators conducted surveillance as ROMAN received delivery of approximately 20 pounds of methamphetamine and later seized the methamphetamine from ROMAN's vehicle during a traffic stop.

13. During the investigation into ROMAN, investigators learned that he had previously deposited more than $20,000 in cash into bank accounts for a business, Zamudio Construction LLC.

**B.   Identification of Ronny Fernando BELTRAN as Organizer and Chief Executive Officer of Zamudio Construction LLC**

14. According to documents filed with the California Secretary of State, Zamudio Construction LLC ("Zamudio Construction") was established on November 3, 2021. The Initial Filing lists a mailing address as 925 West 152nd Street, Compton, California 90220 (the SUBJECT PREMISES) and lists Ronny Fernando BELTRAN as the Organizer of the LLC.

15. On November 8, 2021, a Statement of Information (SOI) was filed with the California Secretary of State. The SOI lists the Business Address as 925 West 152nd St, Compton, CA 90220 (the SUBJECT PREMISES). Ronny Fernando BELTRAN is listed as the sole Manager or Member and the Chief Executive Officer of ZAMUDIO. The Type of Business listed is General Construction. As of March 5, 2025, ZAMUDIO has a listed status of "Active" on the California Secretary of State's website.

**C.   Analysis of Zamudio Construction's Financial Activity**

16. As of the date of this affidavit, investigators have identified five bank accounts for ZAMUDIO. They are listed below and collectively referred to as the "Zamudio Accounts."

17. Based on documents obtained from each the banks identified below, BELTRAN opened each of the Zamudio Accounts and listed himself as the sole signatory for each account.

| Account Reference | Bank | Acct. No. | BELTRAN's Title | Business Address |
|---|---|---|---|---|
| "Chase 2151" | JP Morgan Chase | -2151 | Manager | SUBJECT PREMISES |
| "Chase 7072" | JP Morgan Chase | -7072 | Manager | SUBJECT PREMISES |
| "Wells 9929" | Wells Fargo | -9929 | Managing Member | SUBJECT PREMISES |
| "B of A 7066" | Bank of America | -7066 | Member | SUBJECT PREMISES |
| "BMO 5548" | BMO Bank | -5548 | N/A | SUBJECT PREMISES |

18.  Analysis of the transactional activity for the Zamudio Accounts shows a pattern of cash deposits going into the Zamudio Accounts. The funds obtained through the deposited cash are then rapidly depleted primarily through cash withdrawals and wire transfers to Mexico-based financial institutions or to fund the purchase of off-road style vehicles.

19.  Specifically, records for the Zamudio Accounts indicate that $2.9 million in cash was deposited into the accounts between January 2022 and August 2024. Many of the deposits take place at out-of-state branches and ATM's, including Kansas, Nebraska, Minnesota, Virginia, Nebraska, Washington, Colorado, and New York.

20.  During that same time, from January 2022 to August 2024, approximately $1.4 million in cash was withdrawn from the Zamudio Accounts at ATM's and bank branches located primarily Southern California, specifically Compton, Gardena, Inglewood,

and Los Angeles. In other words, the cash was deposited out of state and then withdrawn from locations that are near the SUBJECT PREMISES.

21.  During that same timeframe, the Zamudio Accounts also executed approximately $1.4 million in wire transfers. Of that amount, approximately $765,000 was wired to suspected Mexican bank accounts in the name of several Mexican entities. The majority of the remaining wires were sent domestically to off-road vehicle dealerships and related aftermarket parts dealers.

22.  Based on my analysis of the Zamudio Accounts, there are minimal transactions that I would expect to see in an account used for a construction or remodeling business. For example, a construction company would likely employ people and issue them paychecks or need to purchase materials or supplies for construction projects.

23.  Similarly, while some customers might pay a construction company in cash, I would expect at least some customers to pay for construction projects with personal or business checks.

24.  During the period from January 2022 to August 2024, while there were a few incoming out of state wire transfers that referenced construction or remodeling and a few transactions at hardware stores, these transactions accounted for less than 3% of the activity in the Zamudio Accounts.

25.  Finally, the volume of activity in the Zamudio Accounts is also inconsistent with representations BELTRAN made to at least some of the banks when he opened the Zamudio

7

Accounts. For example, when BELTRAN opened the Wells Fargo account in 2023, he listed Zamudio Construction's annual gross revenue as $220,000, but Zamudio Construction received cash deposits far greater than $220,000 per year.

26. While the activity in the Zamudio Accounts does not appear to be consistent with the operation of a legitimate construction company, based on my training, experience, and knowledge of this investigation, it does appear to be consistent with the laundering of drug proceeds. I am aware that individuals involved in laundering drug-trafficking proceeds will often use bank accounts to collect proceeds through out-of-state deposits, and then to withdrawal the funds in Southern California or sometimes transferred directly to Mexico. The pattern of activity I observed in the Zamudio Accounts is consistent with this method of collecting drug trafficking proceeds.

**D.    Detailed Discussion of $195,000 in Cash Deposited into the Zamudio Accounts on June 11, 2024**

27. As discussed above, investigators identified BELTRAN and Zamudio Construction through deposits made by another target, Elijah ROMAN. During the investigation, ROMAN coordinated the sale of approximately 3 pounds of methamphetamine to a cooperating source and agents seized approximately 20 pounds of methamphetamine from ROMAN.

28. During the narcotics investigation, I determined that on June 11, 2024, ROMAN deposited approximately $22,500.00 in cash into the Zamudio Accounts. ROMAN broke up his deposits into

a $10,500 deposit into the Chase 2151 account and a $12,000
deposit into the Wells 9929 account. The deposits were conducted
at bank branches located in Omaha, Nebraska.

29.  Due to the amount being deposited, a Currency
Transaction Report ("CTR") was completed by the banks listing
ROMAN as the depositor on ZAMUDIO's behalf. Additionally,
surveillance footage obtained from the banks show ROMAN standing
at the teller counter on June 11, 2024.

30.  Records indicate that another target of this
investigation, J.L., deposited approximately $172,000 in cash
into the Zamudio Accounts on the same day from bank branches in
or around Denver, Colorado. J.L. broke up his deposits by
depositing $58,189 into the Wells 9929 account, $56,800 into the
Chase 2151 account, and $57,400 into the Chase 7072 account.

31.  Due to the amount being deposited, a Currency
Transaction Report ("CTR") was completed by the banks listing
J.L. as the depositor on ZAMUDIO's behalf. Additionally,
Surveillance footage obtained from the banks shows J.L. standing
at the teller counter on June 11, 2024.

32.  After ROMAN and J.L. deposited more than $195,000 into
the Zamudio Accounts on a single day, the following transactions
took place:

    a.  Three wires a Mexican investment brokerage firm
totaling approximately $76,000.

    b.  One wire of approximately $4,600 to a US based
off-road parts company.

c.    One wire of approximately $13,000 to a New York based attorney. Internet research showed that this attorney recently gained notoriety for representing Joaquin "El Chapo" Guzman

d.    One cash withdrawal of $5,000 in Inglewood, California.

**E.    <u>Establishment of MDM 360 LLC with California Secretary of State</u>**

33.    While investigating Zamudio Construction, I identified transactions between Zamudio Construction and another entity, MDM 360 LLC.

34.    A review of the CA SOS website shows that MDM 360 LLC ("MDM 360") was established on June, 6, 2023. The Initial Filing lists a mailing address as 925 West 152nd Street, Compton, California 90220 and lists Maria Munoz as the Organizer. As of March 11, 2025, MDM 360 has a listed status of "Active" on the California Secretary of State's website.

**F.    <u>Analysis of MDM 360's Financial Activity</u>**

35.    As of early 2025, investigators identified two bank accounts for MDM 360.

36.    The first account is a Wells Fargo bank account with an account number ending in -5802 ("Wells 5802"). This account was opened on June 20, 2023. The description of business as listed as "Event Equipment Rental". Maria MUNOZ is listed as the sole signatory, with a title of "CEO". The mailing address is listed as "925 West 152nd St, Compton, CA 90220" (the SUBJECT PREMISES).

37.   The second account is a JP Morgan Chase bank account with an account number ending in -5171 ("Chase 5171"). This account was opened on January 5, 2024. Maria DelDolores MUNOZ was initially listed as the sole signatory, with a title of "Manager". The business address is listed as "925 W 152nd St, Compton, CA 90220" (the SUBJECT PREMISES).

38.   On January 5, 2024, BELTRAN was added as an additional signor and added to Chase 5171 with the title "SIGNER".

39.   A review of transaction activity in the MDM 360 Accounts shows the Chase 5171 account had minimal activity between January and July 2024. The transactions were primarily conducted through the Wells 5802 account.

40.   The activity in the Wells 5802 account was almost entirely funded by cash deposits, transfers from ZAMUDIO, or from MUNOZ' personal account. From June 20, 2023 to November 29, 2024, cash deposits totaling approximately $42,000 were deposited into Wells 5802. Many of the cash deposits took place at out-of-state branches and ATMs, followed by cash withdrawals in Southern California. The following is a sample of transactions in Wells 5802:

**Activity in Wells 5802 Account**

| Date | Location | Deposits | Withdrawal |
|---|---|---|---|
| 7/10/2023 | Shawnee, KS | $ 2,900.00 | |
| 7/10/2023 | Shawnee, KS | $ 3,000.00 | |
| 7/12/2023 | Gardena, CA | | $ (3,000.00) |
| 9/5/2023 | San Diego, CA | $ 3,980.00 | |
| 9/11/2023 | Zelle from Zamudio | $ 2,500.00 | |
| 9/11/2023 | Compton, CA | | $ (5,000.00) |
| 2/15/2024 | Zelle from Zamudio | $ 3,000.00 | |
| 2/21/2024 | Minneapolis | $ 2,800.00 | |
| 2/21/2024 | Minneapolis | $ 3,000.00 | |
| 2/21/2024 | Minneapolis | $ 2,900.00 | |
| 2/21/2024 | Minneapolis | $ 1,000.00 | |
| 2/23/2024 | Branch withdrawal | | $ (9,000.00) |
| 3/5/2024 | Minneapolis | $ 10,000.00 | |
| 3/8/2024 | Branch withdrawal | | $ (9,000.00) |
| 4/5/2024 | Baltimore, MD | $ 2,560.00 | |
| 4/5/2024 | Baltimore, MD | $ 2,440.00 | |
| 4/5/2024 | Zelle to Alfredo Castaneda | | $ (1,675.00) |
| 4/8/2024 | Gardena, CA | | $ (1,000.00) |
| | **Total Amounts** | $ 40,080.00 | $ (28,675.00) |

41.  Similar to the activity in the Zamudio Accounts, the MDM 360 Accounts do not reflect activity that I would expect to see for a legitimate business. I do not see transactions consistent with the purchase of items to be used in an event equipment rental business nor do I see incoming payments that appear to be customers paying for equipment rentals (e.g., no check payments, no debit or credit card payments).

42.  Also, similar to the Zamudio Accounts, the activity in the MDM 360 Accounts, based on my training and experience, is consistent with laundering drug proceeds. Specifically, the funds appear to primarily come from out-of-state cash deposits or transfers from Zamudio Construction and then many of the funds appear to be withdrawn as cash near the SUBJECT PREMISES or used for typical living expenses (e.g., pizza, fuel).

G.   **Lack of Legitimate Employment or Business Activity for BELTRAN and MUNOZ**

43.  Analysis of BELTRAN and MUNOZ personal accounts show direct deposits from "Stripe", "Stripe Lyft", and "Uber". Internet research shows that these payments are consistent with BELTRAN and MUNOZ driving for the ride share services, Lyft and Uber.

44.  Review of bank surveillance footage from Wells Fargo shows screenshots of an ATM transaction taking place at the South Gate, Los Angeles branch on July 30, 2024. The screenshots show BELTRAN conducting the transaction while drive a white Toyota sedan, California Plate 9JWH296 (SUBJECT VEHICLE 3). In the front windshield an illuminated pink sign reading "Lyft" is visible.

45.  Employment Development Department ("EDD") records were obtained for BELTRAN and MUNOZ. The EDD listed "No Record" for wage history for the periods from January 1, 2022 to June 30, 2024 for BELTRAN. The EDD listed a total of approximately $600 for MUNOZ for the periods from January 1, 2022 to September 30, 2024.

**H.    Previous Drug Seizures Involving BELTRAN and/or MUNOZ**

46.  On December 5, 2014, BELTRAN was arrested for importing methamphetamine into the United States, and was later convicted and sentenced to 46 months in custody in connection with the arrest. Case No. 3:15cr0003-DMS (S.D. Cal.).

47.  On June 22, 2023, officers from the Fontana Police Department seized approximately 30 pounds of methamphetamine from BELTRAN and MUNOZ' vehicle, and after obtaining consent to

search the SUBJECT PREMISES, officer seized an additional 47
pounds of methamphetamine and two firearms.

**I.    BELTRAN and MUNOZ Are Both Currently Subject to Arrest**

48.  On March 18, 2025, a grand jury in the Southern
District of California indicted BELTRAN and MUNOZ for conspiracy
to launder monetary instruments in violation of Title 18, United
States Code, Section 1956. Case No. 3:25cr0819-BAS (S.D. Cal.).

49.  Sealed warrants have been issued for the arrest of
both BELTRAN and MUNOZ.

**J.    There is Probable Cause to Believe that BELTRAN and MUNOZ
Continue to Live in the SUBJECT PREMISES**

50.  On March 5, 2025, investigators reviewed records from
the California Department of Motor Vehicles ("DMV") that
confirmed Ronny Fernando BELTRAN and Maria MUNOZ listed the
SUBJECT PREMISES as their mailing address on their California
driver's licenses as of March 2, 2022 and August 19, 2024,
respectively.

51.  Law enforcement agents have driven by the SUBJECT
PREMISES on multiple occasions. On October 23, 2024, I drove by
the SUBJECT PREMISES and took photographs. I observed a gray
Dodge RAM pick-up truck bearing California license plate 80064K3
(SUBJECT VEHICLE 1) parked on West 152nd Street, blocking the
drive-way of the SUBJECT PREMISES. SUBJECT VEHICLE 1 was also
observed at the SUBJECT PREMISES when agents drove past it on
December 31, 2024, January 7, 2025, March 5, 2025, and March 28,
2025.

52.  On March 5, 2025, a review of California DMV records indicated that California license plate 80064K3 is associated with a 2022 Dodge RAM with the registered owner(s) as "Munoz Maria, or Beltran Ronny F, 925 W 152nd St City: Compton" (the SUBJECT PREMISES).

53.  On December 31, 2024, an individual matching the description of Ronny Fernando BELTRAN was observed on the front porch of the SUBJECT PREMISES, as well exiting SUBJECT VEHICLE 1 in front of the SUBJECT PREMISES.

54.  On March 28, 2025, an individual matching the description of Maria MUNOZ was observed driving a Toyota sedan on West 152nd Street toward the SUBJECT PREMISES.

**K.   There Is Probable to Believe That Evidence of the Subject Offense Will Be Found at the SUBJECT PREMISES**

55.  Based on my training and experience investigating drug-trafficking and financial offenses and my familiarity with similar investigations conducted by other law enforcement agents, I know the following:

a.   Money laundering is a complex enterprise that often involves numerous co-conspirators, from the individuals conducting the illegal activity that generates the unlawful proceeds, couriers involved in delivering proceeds, any intermediaries involved in transactions to conceal the source or nature of the proceeds, and the ultimate recipients of the funds after they have been laundered.

b.   Individuals involved in money laundering will often communicate with co-conspirators to coordinate regarding

the collection, storage, deposit, and disbursement of the funds being laundered. Due to the large amount of currency that is often involved, they will often communicate to confirm the correct amount of currency has been delivered, and to confirm that the correct amount(s) of currency are being distributed to the correct parties. These communications may also include means of verifying the identity of the other parties involved in transactions, such as the use of a U.S. dollar bill serial numbers as a type of confirmation code

c.    Money launderers often travel by car, bus, train, or airplane, both domestically and to foreign countries, to collect or pick up proceeds prior to conducting their financial transactions.

d.    Money launderers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the collection, deposit, transmission, storage, or disbursement of illegal proceeds. These records are often maintained where money launderers have ready access to them, such as on their cell phones and other digital devices, and in their residences or stash houses.  They often maintain these records in their residences or stash houses for months or years at a time. These records may include who and were currency was picked up, lists of account numbers to be used for depositing and transferring the proceeds, lists of transfers that were executed, and the individuals that received the funds. Such records are used as a basis for accounting and for settling existing debts and are

often maintained for a substantial period of time even after the debts are collected.

      e.   Individuals involved in money laundering commonly handle large amounts of bulk currency. Unlawful activity often generates proceeds in the form of bulk cash and part of the money launderer's role is to legitimize the cash and introduce it into the financial system. To do this, launderers frequently attempt to transfer and conceal the source of the money by means, including, but not limited to: placing assets in names other than their own to avoid detection while maintaining control; laundering the money through what appears to be a legitimize business or businesses; hiding money in their homes, safes and safety deposit boxes; or using the money to buy assets which are difficult to trace.  Records of these and other types of transactions are often found at the residences or stash houses of individuals involved in money laundering.

      f.   Drug traffickers often use multiple vehicles to transport their narcotics and may keep stashes of narcotics in their vehicles in the event of an unexpected opportunity to sell narcotics arises.

      g.   Individuals involved in money laundering often maintain several digital devices, including cellular telephones, computers, tablets, and other communication devices, at their residences, residences of associates, stash houses, places of business, in their vehicles, and/or on their person for the purpose of arranging transactions.  These phones range from sophisticated smart phones using digital communications

applications such as Blackberry Messenger, WhatsApp, and the like, to cheap, simple, and often prepaid flip phones, known colloquially as "drop phones" or "burner phones," for actual voice communications.  Further, it has been my experience that those involved in money laundering maintain contact information for other coconspirators in their cellular telephones. Individuals involved in money laundering will a frequently use programs such as Microsoft Excel to maintain records regarding financial transactions in their computer, laptop, or other digital device.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## IV. __CONCLUSION__

56.  For all the reasons described above, there is probable cause to believe that BELTRAN and MUNOZ have violated Title 18, United States Code, Section 1956 (conspiracy to launder monetary instruments). Additionally, there is probable cause to believe that the items listed in Attachment B, which constitute evidence, contraband, fruits of crime, or other items illegally possessed, and people subject to arrests, relating to violations of the SUBJECT OFFENSES, will be found at the SUBJECT PREMISES, as described in Attachment A-1; in SUBJECT VEHICLE 1, as described in Attachment A-2; in SUBJECT VEHICLE 2, as described in Attachment A-3; in SUBJECT VEHICLE 3, as described in Attachment A-4; in SUBJECT VEHICLE 4, as described in Attachment A-5; in SUBJECT VEHICLE 5, as described in Attachment A-6.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
March, 2025.


_____
HON. KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE